**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| DERRICK LOFTIS,<br>　　　　　　　　Petitioner,<br><br>　vs.<br><br>WARDEN ALMAGER,<br>　　　　　　　　Respondent. | CASE NO. 1:07cv01603 JAH (LSP)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

　　　　Petitioner Derrick Loftis (hereinafter "Petitioner") is a state prisoner proceeding pro se with a Petition for a Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner challenges his Kings County Superior Court conviction of second degree murder and sentence of fifteen years to life in prison. Petitioner argues that he is entitled to habeas relief on three grounds: (1) that the Court should allow him to withdraw his plea of no contest because he did not admit facts sufficient to support the plea; (2) his plea was involuntary because he did not have a complete understanding of the charges or penalty; and (3) his plea was the result of coercion on the part of his defense counsel.

///

///

Respondent has filed an Answer. (Doc. No. 10.) Respondent contends habeas relief is unavailable because Petitioner did not present his claims to the state courts as a violation of federal law, and notwithstanding this failure to exhaust, the claims fail on their merits. (Doc. No. 10 at 2.) Petitioner has filed a Traverse. (Doc. No. 15.)

This matter has been reassigned to visiting Judge John A. Houston, United States District Judge for the Southern District of California. (Doc. No. 16.) For the reasons set forth below, the Court **DENIES** the Petition on the merits.

## I. TRIAL COURT PROCEEDINGS

The statement of facts in this case is taken from the unpublished Court of Appeals opinion in People v. Loftis, slip op. No. F050676 (Cal.Ct.App., 5th Dist., May 1, 2007). (Lodgment No. 4.) The Court gives deference to state court findings of fact and presumes them to be correct. See Sumner v. Mata, 449 U.S. 539, 545-47 (1981). The Court of Appeal summarized Petitioner's case as follows:

> On February 27, 2004, defendant and Richard Banuelos received a telephone call from 15-year-old Celena V. She informed them she wanted to buy an eight-ball of crystal methamphetamine. They went to pick her up and she got into the vehicle. They drove to the Holiday Lodge, where defendant kept his bag of methamphetamine. Defendant and Celena were in a room alone. Celena bought the methamphetamine from defendant for $100, then she smoked and snorted some of it. Defendant also consumed some with her. Defendant and Celena had been in the room for about 45 minutes when Celena began to "get 'crazy' by freaking out, getting hot, and shaking." Banuelos arrived and the three of them left together. They went to defendant's residence and Banuelos gave Celena some milk.
>
> Leslie Saiz arrived at the residence. Defendant wanted to go to the Palace casino to look for his girlfriend. Although Celena had not improved, defendant did not take her to the hospital just down the street because "it never crossed his mind." Instead, the four of them got in the vehicle and drove toward the Palace. Defendant noticed Celena was not breathing. He shook her and told the others he wanted to take her to the hospital, but Saiz said ["N]o, ... she was [dead."] They had decided not to seek medical care because they feared going to jail. They stopped on a gravel road and Saiz and Banuelos took Celena out of the car, laid her on the ground and covered her with tumbleweeds. Defendant did not get out because he was feeling too sick to move. They drove on to the Palace to meet defendant's girlfriend.
>
> Once at the Palace, defendant played slot machines and met up with his girlfriend. They went home and defendant was sick the whole day and night. Defendant thought the methamphetamine must have been bad since he also got sick.

The following night, Celena's parents filed a missing person report. About a month later, Celena's body was found and a few days after that defendant was interviewed. He first denied any involvement, then stated she had overdosed. He then gave the preceding account.

On December, 16, 2004, defendant and Banuelos were charged with murder and four other charges relating to the incident.[FN2] On June 7, 2005, the district attorney filed a complaint charging defendant and Banuelos with a single charge of murder (Pen. Code, § 187 subd. (a)).[FN3] The same day, defendant pled no contest to second degree murder for an agreement that the prosecution dismiss the information previously filed against him. Defendant did not complete a written plea form, but the following discussion took place at the plea hearing:

> FN2. We take judicial notice of the information in case No. 04CM3036. (Evid.Code. §§ 452, subd. (d), 459; California Rules of Court, rule 8.252(a)(formerly 22(a)).)

> FN3. All statutory references are to the Penal Code unless otherwise noted.

"THE COURT: ... In this matter, [Defense Counsel], have you fully explained the consequences of a no contest plea to your client along with his rights and defenses?

"[DEFENSE COUNSEL]: Yes.

"THE COURT: Does he understand [] the elements of the crime [to] which he's pleading no contest?

"[DEFENSE COUNSEL]: Yes.

"THE COURT: [Defendant], do you understand the maximum for the crime you're pleading guilty to or no contest to is, as previously stated, a life term in this matter, it's a second degree murder and would be a second degree murder conviction for which the penalty is 15 years to life. You would have to serve at least the minimum term before you're eligible for [parole] in this matter. [¶] Also, as previously stated, you would be ineligible for probation in this matter as well as being limited to conduct credits, work time credits, and I believe 15 percent prior to receiving any of those credits for the time you're serving in jail; do you understand that?

"DEFENDANT: Yes. [¶] ... [¶]

"THE COURT: Okay. Sir, do you understand that you have a right to a speedy and public trial in this matter?

"DEFENDANT: Yes.

"THE COURT: Do you give up that right?

"DEFENDANT: Yes.

"THE COURT: Do you understand that you have a right to a trial by jury or court?

1  "DEFENDANT: Yes.

2  "THE COURT: And do you give up that right?

3  "DEFENDANT: Yes.

4  "THE COURT: Do you understand you have a right to confront and cross-examine the witnesses against you, that is to see them, hear them, and ask questions or have your attorney do so?

6  "DEFENDANT: Yes.

7  "THE COURT: Do you give up that right?

8  "DEFENDANT: Yes.

9  "THE COURT: Do you understand you have a right to have the Court issue subpoenas to compel the attendance of witnesses and production of evidence at no cost to you?

11  "DEFENDANT: Yes.

12  "THE COURT: Do you give up that right?

13  "DEFENDANT: Yes.

14  "THE COURT: Do you understand you have a right to present evidence in your own defense including your own testimony, but no one can make you say anything about this case or plead guilty if you don't want to. Do you understand you have a right to remain silent?

17  "DEFENDANT: Yes.

 "THE COURT: Do you give up that right?

 "DEFENDANT: Yes.

 "THE COURT: Do you understand you have a right to require the prosecution prove the case against you beyond a reasonable doubt?

21  "DEFENDANT: Yes.

22  "THE COURT: Do you give up that right?

23  "DEFENDANT: Yes.

24  "THE COURT: *Do you understand by pleading guilty or no contest you will be waiving your right to appeal any conviction in this matter?*

 "DEFENDANT: *Yes.* (Italics added.)

 "THE COURT: Do you understand if you're not a citizen of the United States this plea can result in deportation, exclusion from admission to the United States or denial of naturalization or amnesty?

 "DEFENDANT: Yes.

1  "THE COURT: Do you understand, sir, that again since you would be sentenced to a state prison in this matter that if placed on parole that you would be a lifetime placement on parole unless terminated earlier by the board of prison terms[?]

"DEFENDANT: Yes.

"THE COURT: Do you understand if you're on parole or probation to any other court this plea will be a violation of probation or parole?

"DEFENDANT: Yes.

"THE COURT: *Do you understand that the Court must impose a fee of not less than $200, no more than $10,000 and order you to pay that amount to the State Restitution Fund?*

"DEFENDANT: *Yes.* (Italics added.)

"THE COURT: Do you understand the nature of the charges against you, sir?

"DEFENDANT: Yes.

"THE COURT: Do you understand the possible defenses to the charge?

"DEFENDANT: Yes.

"THE COURT: Has anyone made any promises to you to get you to plea[d] other than what we've said here in open court?

"DEFENDANT: Nope.

"THE COURT: Has anyone made any threats against you or any member of your family or anyone close to you to get you to plea[d]?

"DEFENDANT: Nope.

"THE COURT: *Factual basis.*

"[DEFENSE COUNSEL]: *Your Honor, pursuant to People v. West [(1970) 3 Cal.3d 595, defendant] is entering this plea to avoid the possibility of being convicted of first degree murder.*

"THE COURT: *Is that correct, [Prosecutor]?*

"[PROSECUTOR]: *That is correct, it's People v. West.*

"THE COURT: *Okay. The Court will accept, will be willing to accept it pursuant to People v. West.* (Italics added.)

[Defense Counsel], do you concur in your client's waiver of Constitutional, statutory rights?

"[DEFENSE COUNSEL]: I do, your honor.

"THE COURT: [Defendant], do you have any questions about what's going on in court today, sir?

1  "DEFENDANT: Nope.

2  "THE COURT: Do you understand everything we've gone over today then?

3  "DEFENDANT: Yep.

4  "THE COURT: The Court will find the defendant understands the nature of the charges and all waivers are voluntary, intelligently, and expressly made. "[Defendant], to the charge in Count I of the Complaint that on or about the ... 28th day of February, 2004, you did commit a felony violation of Section 187(a) of the Penal Code of the State of California in that you did unlawfully, and with malice aforethought, murder Celena V., a human being, to that charge how do you now plea[d]?

8  "DEFENDANT: No contest.

9  "THE COURT: Do you understand the no contest plea is treated the same as a guilty plea for sentencing purposes?

10 "DEFENDANT: Yes.

11 "THE COURT: [Defense Counsel], do you concur in your client's entry of the no contest plea?

13 "[DEFENSE COUNSEL]: I do, your Honor.

14 "THE COURT: The Court will accept the no contest plea as knowingly, intelligently, and voluntarily [made].

    The trial court sentenced defendant to 15 years to life and ordered, among other things, that defendant pay a $3,000 restitution fine pursuant to section 1202.4, subdivision (b) and a $3,000 parole revocation fine pursuant to section 1202.45, which was suspended pending revocation of parole. The prosecution formally dismissed the information in Case No. 04CM3036 as to defendant.

19 (Lodgment No. 4, People v. Loftis, No. F050676, slip op. at 2-8.)

20                          **II. STATE COURT PROCEEDINGS**

21  Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate

22 District, case number F050676, raising three grounds for relief.[1]  Petitioner's opening brief was

23 filed on September 15, 2006, Respondent's Brief was filed on October 24, 2006, and

24 Petitioner's Reply Brief was filed on November 3, 2006.  The Court affirmed Petitioner's

25 conviction and sentence in an unpublished opinion filed on May 1, 2007.  (Lodgment No. 4.)

---

[1] In his appeal before the California Court of Appeal, Petitioner argued that: (1) No valid waiver prevented him from prosecuting the appeal; (2) He must be given the opportunity to withdraw his plea because he did not admit facts sufficient to support the plea; and (3) The trial court erred in ordering him to pay a $3,000 restitution fine pursuant to Penal Code section 1202.4, in violation of the plea agreement.  (See Lodgment No. 1.)

On June 6, 2007, Petitioner filed a petition for review of the appellate court's decision in the California Supreme Court.[2] (Lodgment No. 5, Case No. S153227.) The California Supreme Court summarily denied the petition on July 25, 2007, without comment or reference to citation. (Lodgment No. 6.)

### III. SCOPE OF REVIEW

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

Petitioner's claim that he should be allowed to withdraw his plea was adjudicated on the merits in state court.[3] As amended, 28 U.S.C. § 2254(d) now reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1)-(2) (West 2006).

A decision is "contrary to" clearly established law if it fails to apply the correct controlling authority, or if it applied the controlling authority to a case involving facts

---

[2] In his petition for review before the California Supreme Court, Petitioner's sole claim was his contention that: "Review Is Needed To Determine Whether Petitioner Should Have Been Allowed To Withdraw His Plea Because He Did Not Admit Facts Sufficient To Support The Plea." (<u>See</u> Lodgment No. 5.)

[3] Petitioner's claims that he had an incomplete understanding of the charges and that his plea was coerced were not raised in any state court, and were therefore not adjudicated on the merits. Those claims are addressed in section IV-A of this Order, *infra*.

1 materially indistinguishable from those in a controlling case, but nonetheless reaches a different result. See Williams v. Taylor, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." Id.; Bruce v. Terhune, 376 F.3d 950, 953 (9th Cir. 2004).

Even when the federal court undertakes an independent review of the record in the absence of a reasoned state court decision, the federal court must "still defer to the state court's ultimate decision." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). If the state court decision does not furnish any analytical foundation, the review must focus on Supreme Court cases to determine "whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law." Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir. 2001). Federal courts also look to Ninth Circuit law for persuasive authority in applying Supreme Court law and to determine whether a particular state court decision is an "unreasonable application" of Supreme Court precedent. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

## IV. DISCUSSION

In the instant Petition, Petitioner asserts in Claim One that the appellate court should have allowed him to withdraw his plea of no contest to second degree murder because he did not admit facts sufficient to support the plea in the trial court, and the appellate court's failure to allow such a withdrawal violated his federal due process rights. (Pet. at 5-6.) Respondent maintains the claim is unexhausted because Petitioner failed to present the claim in state court as a violation of federal law, and additionally argues that the claim may be denied on the merits despite Petitioner's failure to exhaust because the Petition does not raise a colorable claim. (Ans. at 8-9.)

Petitioner contends in Claims Two and Three that he had a incomplete understanding of the charges against him, and that his plea was coerced. (Pet. at 6-8.) Respondent maintains these two claims were never presented to the California Supreme Court and are therefore not properly before this Court. (Ans. at 8.)

**A.      Exhaustion**

The exhaustion of available state judicial remedies is generally a prerequisite to a federal court's consideration of claims presented in habeas corpus proceedings. 28 U.S.C. § 2254(b); Rose v. Lundy, 455 U.S. 509, 522 (1982). As a matter of federal-state comity, federal courts generally do not consider a claim in a habeas corpus proceeding until the state courts have had an opportunity to act upon the claim. Rose, 455 U.S. at 515. To exhaust state judicial remedies, a state prisoner must present the California Supreme Court (or the highest state court with jurisdiction over the claims) with a chance to rule on the merits of every issue raised in his or her federal habeas petition. 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987).

In most instances, a claim is exhausted once it is presented to a state's highest court, either on direct appeal or through state collateral proceedings. Sandgathe v. Maass, 314 F.3d 371, 376 (9th Cir. 2002). Moreover, a petitioner must have raised the very same federal claims brought in the federal petition before the state supreme court. Duncan v. Henry, 513 U.S. 364, 365-66 (1995). For example, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Id. at 366. The petitioner carries the burden of showing that a claim has been exhausted. Williams v. Craven, 460 F.2d 1253, 1254 (9th Cir. 1972). However, The Ninth Circuit has held that, "for purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue." Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003).

**1.      Claim One**

Petitioner has exhausted his state judicial remedies for Claim One. In his appeal before the California Court of Appeal, Petitioner argued the same factual basis of his claim as presented here in federal court, but did not specifically articulate a federal constitutional violation or cite to a federal case analyzing the issue. However, Petitioner cited to two state court cases, both involving an analysis of the federal constitutional issue. In his brief to the

state appellate court, Petitioner cited to People v. Watts, 67 Cal.App.3d 173 (1977) and People v. Wilkerson, 6 Cal.App.4th 1571 (1992), in support of his argument that he should be allowed to withdraw his plea due to an insufficient factual basis. The state court's decision in those cases, Watts in particular, involves an analysis of the purpose underlying the factual basis requirement in the California Penal Code in which the court cites to a number of United States Supreme Court cases, in addition to a treatise on federal practice and procedure. See Watts, 67 Cal.App.3d at 178-80. Moreover, the state appellate court cited those same cases in considering, and ultimately rejecting, Petitioner's claim on direct appeal. (See Lodgment No. 4 at 9-10.) Petitioner again cited to Watts in his petition for review filed with the state supreme court. (See Lodgment No. 5 at 4.) Petitioner's citation to state cases analyzing the federal issue was sufficient to exhaust his federal claim in state court. See Peterson, 319 F.3d at 1158. As the California Supreme Court's silent denial of Petitioner's claim is taken to rest on the same grounds as that of the state appellate court, the claim was properly presented to the state supreme court. Therefore, the Court will consider this claim on the merits.

### 2.  **Claims Two and Three**

Liberally construing the Petition, the Court notes that Petitioner briefly offers two additional grounds for habeas relief, including that: (1) he pled no contest to second degree murder without an understanding of the charges or penalty; and (2) his plea was coerced due to the incompetence of his trial counsel, who was under the influence of drugs.[4] (Pet. at 6-7.) The Court has reviewed the state record, and it is clear these claims were never presented to the state supreme court, and are therefore unexhausted. See Duncan, 513 U.S. at 367, Vasquez v. Hillary, 474 U.S. 254, 257 (1986).

An application for a writ of habeas corpus containing unexhausted claims generally must be dismissed. See Rose v. Lundy, 455 U.S. at 522. However, federal district courts have the discretion to deny a habeas petition on the merits despite a petitioner's failure to fully exhaust state judicial remedies. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of

---

[4] Courts have a duty, particularly in regards to complaints and motions filed by pro se prisoners, to construe pro se pleadings liberally. See Zichko v. Idaho, 247 F.d 1015, 1020-21 (9th Cir. 2001); see also Hamilton v. United States, 67 F.3d 761, 764 (9th Cir. 1995).

habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")  The Supreme Court has held that where a non-exhausted claim is not even colorable, a reviewing court may deny it on the merits. See Granberry, 481 U.S. at 135; see also Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005) (holding that a federal court "may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not even raise a colorable federal claim."); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1992) (finding the exhaustion requirement inapplicable to claims that "clearly do not rise to the level of alleged deprivations of constitutional rights.")[5]

To the extent that the Court could reach the merits of these claims, both contentions are without merit, because the evidence in the state court record strongly supports the state court's conclusion that Petitioner's decision to plead no contest to second degree murder was knowing, voluntary, and intelligent.

A plea is constitutionally valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970).  In determining the validity of a plea, a reviewing court should give considerable weight to the truth of in court declarations made by a defendant. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.")  Moreover, on federal habeas review, a state court's findings of fact are presumed correct unless a petitioner rebuts them with clear and convincing evidence. See 28 U.S.C. § 2254 (e)(1). The Supreme Court has stated that, "representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge

---

[5] Additionally, these claims may be technically exhausted in that Petitioner no longer has state court remedies available to him. See Engle v. Isaac, 456 U.S. 107, 125-26 n.28 (1982) (noting that the exhaustion requirement applies "only to remedies still available at the time of the federal petition."); Phillips v. Woodford, 267 F.3d 966, 974 (9th Cir. 2001) ("the district court correctly concluded that [the] claims were nonetheless exhausted because 'a return to state court for exhaustion would be futile.'") If Petitioner attempted to return to state court to raise these claims, the state court's decision would likely involve the imposition of procedural bars. See In re Clark, 5 Cal.4th 750, 797-98 (1993) ("the general rule is still that, absent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied," and describing the "fundamental miscarriage of justice" exception to that rule which does not apply here).

1  accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."
2  Blackledge, 431 U.S. at 73-74.

3  In this case, the trial court engaged in a lengthy colloquy in taking Petitioner's no
4  contest plea. The court explained the charges and maximum penalty under the plea agreement,
5  and asked if Petitioner understood. (Lodgment No. 4 at 3.) Petitioner responded that he did.
6  (Id.) The court asked if Petitioner "understood the nature of the charges" against him, to which
7  Petitioner replied "Yes." (Id. at 6.) The trial court then inquired whether Petitioner understood
8  "the possible defenses to the charge," to which Petitioner replied "Yes." (Id.) In response to
9  the trial court's inquiry, Petitioner stated that no one had made any threats or promises to him
10 to get him to plead. (Id.) The court later asked Petitioner if he had any questions about
11 anything that occurred in court that day, to which Petitioner said "Nope." (Id. at 7.) The court
12 asked again if Petitioner understood everything they had gone over in court that day, to which
13 Petitioner again replied in the affirmative. (Id.)

14 The trial court then made a factual finding that "defendant understands the nature of the
15 charges and all waivers are voluntarily, intelligently, and expressly made." (Id.) After
16 Petitioner pled no contest, the trial court stated that it would "accept the no contest plea as
17 knowingly, intelligently, and voluntarily [made.]" (Id. at 8.)

18 Petitioner's only evidence is his conclusory allegation that he failed to understand the
19 charges or penalty. Ultimately, Petitioner fails to offer evidence sufficient to overcome the
20 statements he made in open court at the plea hearing and the factual findings of the trial court.
21 See Blackledge, 431 U.S. at 73-74; 28 U.S.C. § 2254 (e)(1). To the extent the Court can reach
22 the merits of this claim, Claim Two is without merit.

23 Similarly, Petitioner offers little support for his allegation that his no contest plea was
24 the result of coercion by defense counsel. Petitioner attaches an newspaper article reporting
25 that several weeks after Petitioner's plea, the Kings County District Attorney's Office filed
26 charges against his defense attorney for allegedly driving under the influence of
27 methamphetamine. Petitioner argues that this "indicate[] counsel was under the influence of
28 drugs during plea bargain[]." (Pet. at 7.) Petitioner's no contest plea was on June 7, 2005, and
the article states that defense counsel was arrested on July 30, 2005. (Ex. A to Pet.)

A review of the state court record demonstrates that on November 17, 2005, Petitioner wrote a letter to the trial court asking to withdraw his plea based on counsel's drug use, and the Court granted Petitioner's belated request to appeal. (Lodgment No. 7 at 68-69.) However, in his instant petition, Petitioner fails to offer any evidence that defense counsel coerced him to plead no contest, stating only that counsel "sternly advised Petitioner to plea bargain." (Pet. at 7.) As stated above, the trial court questioned Petitioner thoroughly on his understanding of the plea and potential penalty, and questioned Petitioner as follows:

> "THE COURT: Has anyone made any promises to you to get you to plea[d] other than what we've said here in open court?
>
> "DEFENDANT: Nope.
>
> "THE COURT: Has anyone made any threats against you or any member of your family or anyone close to you to get you to plea[d]?
>
> "DEFENDANT: Nope.

(Lodgment No. 4 at 6.)

In Claim Three, Petitioner again fails to offer evidence sufficient to overcome the presumption of truth accorded the statements he made in open court at the plea hearing. Petitioner also fails to offer any evidence sufficient to overcome the presumption of correctness afforded to the factual findings of the trial court. See Blackledge, 431 U.S. at 73-74; 28 U.S.C. § 2254 (e)(1). To the extent the Court can reach the merits of this claim, Claim Three is without merit.

**B.     Merits**

The last reasoned state court decision addressing Claim One, Petitioner's contention that he should be allowed to withdraw his plea due to an insufficient factual basis during the trial court plea proceedings, was the state appellate court's order denying Petitioner's direct appeal. (Lodgment No. 4.) Petitioner also raised this claim in a petition for review in the California Supreme Court, which denied the claim without comment or citation to authority. (Lodgment No. 6.) Thus, the Court must "look through" that opinion to the state appellate court's reasoned resolution of the claim. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which

gives them *no* effect- which simply "looks through" them to the last reasoned decision- most nearly reflects the role they are ordinarily intended to play.") (italics in original).

After holding that an inquiry on the record is necessary to satisfy state law requirements for establishing a factual basis for a plea, the appellate court stated that stipulation to a document, such as a complaint, police report, or probation report, would constitute a sufficient factual basis if the trial court ensured that the record contained facts that went beyond a bare stipulation and included sufficient details. (Lodgment No. 4 at 8-9.) The court explained:

> The trial court possesses wide discretion in determining whether a sufficient factual basis exists for a guilty or no contest plea. (*Holmes*, *supra*, 32 Cal.4th at p. 443.) "The trial court's acceptance of the guilty [or no contest] plea, after pursuing an inquiry to satisfy itself there is a factual basis for the plea, will be reversed only for abuse of discretion. [Citation.] A finding of error under this standard will qualify as harmless where the contents of the record support a finding of a factual basis for the [negotiated] plea." (*Ibid.*; see *People v. Mickens* (1995) Cal.App.4th 1557, 1564; *Watts*, *supra*, 67 Cal.App.3d at p. 182 [error harmless in light of the superior court file containing grand jury transcript and presentence probation report establishing defendant "participated in the crimes with which he was charged"].)
>
> Here, the trial court accepted counsel's stipulation for the factual basis of the plea pursuant to *People v. West*, *supra*, 3 Cal.3d 595. Assuming this stipulation, which referenced no specific document containing a factual basis, was inadequate, we conclude the error was harmless. As noted, "[i]f the trial court fails to make an on-the-record inquiry as to the factual basis for the plea, the appellate court is free to review the record and determine whether the error is harmless, i.e., whether the record contains sufficient information to ensure the defendant committed the acts to which the plea was entered." (*People v. Wilkerson*, *supra*, 6 Cal.App.4th at p. 1576.) In this case, the probation report provides an adequate factual basis for defendant's plea to second degree murder.

(Id. at 9-10.)

Following a discussion on the three theories of second degree murder, one being implied malice murder, the appellate court reasoned that:

> Here, the probation report contained facts supporting a finding that defendant knew the consequences of his failure to seek medical care for Celena placed her life in danger. He observed her adverse reaction and her continuing condition. He suggested taking her to the hospital and therefore recognized the seriousness of the situation. The facts also show defendant acted with conscious disregard of Celena's life. He knew she was ill and did nothing to help her. The hospital was only a short distance from his house. He and his cohorts simply took Celena along in the vehicle when they headed to the Palace casino. When she quit breathing, defendant mentioned the hospital to his cohorts but he made no real effort to get her there. On the way

>to the casino, they stopped the vehicle, placed Celena's body on the roadside and covered it with tumbleweeds. When they arrived at the casino, defendant played slot machines. In sum, while Celena was experiencing a violent reaction to the methamphetamine and was obviously ailing, even when she quit breathing, defendant consciously disregarded her life-threatening condition and deprived her of medical care, knowing he was placing her life in danger.

(<u>Id.</u> at 11.)

Reasoning that the defendant owed Celena a duty to act, and created the initial risk by selling her the methamphetamine, the appellate court noted that the common law does not distinguish between homicide by act and homicide by omission, and denied Petitioner's claim, concluding that "the record provided an adequate factual basis for defendant's plea to second degree murder. Any error in the trial court's failure to make specific reference to that factual basis was therefore harmless in light of the record." (<u>Id.</u> at 12.)

Existing United States Supreme Court precedent holds that a federal court may not generally grant federal habeas relief based on errors of state law. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 63 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") In the instant petition, Petitioner alleges that the trial court's failure to ensure a sufficient factual basis for his no contest plea, as required under state law, resulted in a violation of his due process rights under the United States Constitution. While the factual basis for the plea was not outlined at the plea hearing, the appellate court concluded that the probation report provided an adequate factual basis for Petitioner's plea.

The Supreme Court has held that even where a plea is accompanied by protestations of innocence by the defendant, the existence of a factual basis in the state court record guarantees federal due process. <u>See</u> <u>Alford</u>, 400 U.S. at 31 ("The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.") Moreover, the Ninth Circuit has specifically held that "the due process clause does not impose on a state court the duty to establish a factual basis for a guilty plea absent special circumstances." <u>Rodriguez v. Ricketts</u>, 777 F.2d 527, 528 (9th Cir. 1985) (per curiam).

Petitioner has not shown that any special circumstances, such as a defendant's protestations of innocence to the trial judge or even the lack of a factual basis to support the plea, are present in his case. See id. Petitioner did not make any claim of innocence at his plea hearings, and makes none currently.  Moreover, Petitioner stated in open court at his plea hearing, under penalty of perjury, that he pled no contest to the charge of second degree murder in the death of Celena V.  Upon inquiry by the trial court, Petitioner affirmed that he understood the nature of the charges, the circumstances of the plea agreement, the potential sentence, that he was not coerced or induced to plead, and that he wished to proceed to sentence on the charges. (Lodgment No. 6 at 8-22.) Moreover, an adequate factual basis exists to support Petitioner's plea.

Based on the statements made at the plea hearing and the trial court's reliance on the probation report, the state court was not unreasonable in concluding that a sufficient factual basis existed for a plea of no contest to second degree murder.  Accordingly, the state court's denial of Petitioner's claim that he should be allowed to withdraw his plea due to a failure to articulate a factual basis was neither contrary to, nor an unreasonable application of, clearly established federal law. See Williams, 529 U.S. at 412-13.  Petitioner is not entitled to habeas relief on Claim One.

## V. CONCLUSION AND ORDER

For the reasons stated above, the Petition for Writ of Habeas Corpus is **DENIED** as to all claims.  The Clerk of Court is directed to enter judgment denying the petition with prejudice.

**IT IS SO ORDERED**.

DATED: July 16, 2009

JOHN A. HOUSTON
United States District Judge